### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CARL N. MERKLE, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action No.  SA-19-CV-640-XR |
| | ) | |
| DAVID S. GRAGG, et al. | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |
| | ) | |

### ORDER

On this date, the Court considered Defendants' motion for entry of a pre-filing injunction (docket no. 28, supplemented by docket no. 33), Plaintiff's response (docket no. 29), and Defendants' reply (docket no. 30). After careful consideration, Defendants' motion is GRANTED.

### BACKGROUND

The history of this case is long, winding, and replete with allegations of a conspiracy implicating the federal judiciary and the United States government writ large. Though the Court's previous order described that history in detail (see docket no. 24 at 1–20), a summary here is necessary for purposes of considering the imposition of a pre-filing injunction. In 2005, Carl N. Merkle ("Plaintiff") and his former wife Janie Merkle ("Janie") entered into a loan to purchase an apartment complex; the complex served as collateral subject to a Note and Deed of Trust ultimately held by Defendant Pilgrim REO, LLC ("Pilgrim") and serviced by Defendant Capital Crossing Servicing Company, LLC ("CCS").

Though in his current pleadings he disputes this, Plaintiff has previously admitted that he was in default of his loan obligations at various times. After a fire damaged the property in 2014,

Plaintiff failed to make repairs, and Pilgrim applied the insurance proceeds to the principal balance of Plaintiff's loan, an action Plaintiff disputes as improper. The following year, CCS sought to accelerate the loan and foreclose on the property on behalf of Pilgrim, and a foreclosure sale was set for January 2016. That month, Plaintiff forestalled the foreclosure by filing a bankruptcy petition under Chapter 11 in the Bankruptcy Court for the Western District of Texas; that case, docketed as 16-50026, was randomly assigned to Bankruptcy Judge Craig Gargotta ("Judge Gargotta"). Pilgrim filed a proof of claim (originally Claim No. 6, now Claim No. 6-3), thus becoming a creditor in the bankruptcy proceeding; in that proceeding, Pilgrim was represented by Defendants David Gragg and Nancy Friend Wilson of the law Firm Langley & Banack. Those attorneys and their firm are defendants in this action.

In August 2016, Pilgrim filed suit against Janie Merkle in the 57th Judicial District Court in Bexar County, seeking an unpaid balance under the Note (Cause No. 2016CI13558). Defendants Joel Reese and Brad Gordon represented Pilgrim and CCS in that state court proceeding, on behalf of Reese Gordon Marketos, LLP. Those attorneys and their firm are defendants in this action.

In the original bankruptcy action, after an unsuccessful mediation, Merkle filed his First Amended Chapter 11 Plan on February 24, 2017. Pursuant to the plan, Merkle was allowed to sell the apartment complex and was required to remit $940,000 of the proceeds to Pilgrim at closing, with the remaining proceeds distributed pursuant to the terms of the plan. Merkle filed objections and a counterclaim to Pilgrim and CCS's Claim, and Judge Gargotta held a hearing in March after which he confirmed the First Amended Plan of Reorganization.

Returning to the state-court action, in May 2017 Plaintiff intervened in that suit, asserting various claims against Pilgrim and CCS. Thereafter, Pilgrim removed the state court case to the

Bankruptcy Court, asserting that Plaintiff's Plea in Intervention asserted the same claims already raised in the original bankruptcy action. That was docketed as an adversary proceeding 17-05041 in connection with the ongoing bankruptcy case. Pilgrim then moved to dismiss Plaintiff's Plea in Intervention for failure to state a claim.[1]

On June 14, 2017, Judge Gargotta granted Plaintiff's motion to sell the Property, and it sold for $1.325 million. Approximately $968,000 of the sale proceeds were paid to Pilgrim, and $161,000 was held in escrow. Plaintiff now contests the validity of the entire claim (based on alleged failure of proof) as well as contending that the payment to Pilgrim was an overpayment of approximately $156,000 based on Plaintiff's own accounting. Plaintiff further asserts that Pilgrim, CCS, and the relevant lawyers have all engaged in an illegal scheme to steal the $161,000 held in escrow.

On June 16, 2017, Pilgrim and CCS filed an attorney's fee motion. Judge Gargotta held a hearing on that motion and the remaining Claim Objections. Plaintiff referred to this hearing as a "sham" and a "kangaroo court." After the hearing, Judge Gargotta granted the motion to dismiss Plaintiff's counterclaims, holding that the notice of default was proper under the Deed of Trust and, therefore, the debt was properly accelerated, and that Plaintiff owed the entire balance when the property was posted for foreclosure. Plaintiff appealed this order to the district court, docketed as 5:17-cv-713. On August 7, Judge Gargotta denied in part and granted in part the Claim Objection, allowing much of Pilgrim's Claim No. 6-3 to stand. Plaintiff appealed that order,

---

[1] In September 2017, Judge Gargotta granted Pilgrim's motion to dismiss Plaintiff's Plea in Intervention, leaving the adversary proceeding consisting solely of Pilgrim's claims against Janie, so the matter was remanded to state court. Merkle appealed that order, docketed as 5:17-cv-1026. Thereafter, Pilgrim non-suited without prejudice its claims against Janie; Plaintiff then attempted to remove that lawsuit back to this Court (docketed as 5:17-cv-1063), upon which Judge Fred Biery dismissed the action because there was no case or controversy to be removed.

docketed as 5:17-cv-801. The following week, Judge Gargotta granted the attorney's fee motion, which Plaintiff also appealed, docketed as 5:17-cv-802. These appeals were consolidated before Judge David Ezra, with 5:17-cv-713 as the lead case. Plaintiff thereafter proceeded *pro se*.

In February 2018, the Trustee filed a motion to dismiss, arguing that Plaintiff was not complying with his obligations under the confirmation plan. Pilgrim and CCS, through the firm Langley and Banack, filed a response to that motion, which Plaintiff moved to strike, believing that CCS is a criminal organization that has stolen $300,000 from him and that Pilgrim's loan was paid off entirely the prior year such that Pilgrim was no longer a legitimate creditor. In April, the Trustee withdrew that motion.

Thereafter, Merkle filed the following motion in the Bankruptcy Court:

Motion to (A) Start Exposing the Sham Record in Merkle's Bankruptcy, (B) Requesting This Court to View Anything Issued by Langley and Banack, Incorporated as Attorneys for Either Capital Crossing Servicing Company, LLC or Pilgrim Reo, LLC Very Skeptically and (C) Requesting a Hearing For Merkle to Express His Grievances To The Court, a Constitutional Right.

On May 8, he filed a "Motion to Supplement the Record to Start Showing that Bankruptcy Fraud Was Committed by Kevin Shea of Capital Crossing." On May 31, he filed a:

Motion To: A) Comment on the Frauds In Dkt 306 and Dkt 307 [responses to his prior motions], and B) Point Out That Merkle Is Actually A Creditor to Capital Crossing Servicing Company, LLC and Pilgrim REO, LLC Since Merkle Overpaid Pilgrim $156,124.79 on His Loan on June 16, 2017, Before Kangaroo Court Trial of June 20 and 21 was Held; (C) That Any Document Referring To Merkle As A Debtor to Capital Crossing or Pilgrim in the Present Tense Is A Fraud, Since, They Are Debtors To Merkle Because of the Frauds Committed by Capital Crossing, Kevin Shea and Langley and Banack, Inc. Attorneys David Gragg and Natalie Wilson and D) Any Orders Issued by Judge Gargotta Arising From the Bankruptcy Court After September 26, 2017 are Likely Illegal Due To His Bias Against Merkle.

On June 8, 2018 Judge Gargotta issued an Omnibus Order denying the above motions. In that order, he warned Plaintiff that his language and conduct were improper and possibly

4

sanctionable. Judge Gargotta wrote that "The Court will by separate order limit [Plaintiff's] ability to file vexatious pleadings with the Court that drain judicial resources and seek relief on matters outside this Court's jurisdiction in this case." He then issued a *sua sponte* order warning Plaintiff that any future filings relating to his appeals in 5:17-cv-713 (the consolidated appeals before Judge Ezra) would be stricken. Plaintiff appealed both the Omnibus Order and the *sua sponte* order (docketed as 5:18-cv-588). He then filed various motions in that appeal, including a motion to permanently transfer his bankruptcy case and a "Motion to Inform the Court that Pilgrim REO, LLC Received Stolen/Embezzled Property and Langley and Banack, Incorporated Attorneys Concealed that Crime." Judge Ezra construed Plaintiff's motion to transfer as a motion to withdraw the reference, i.e. removing the underlying proceeding to the district court. Judge Ezra denied that motion on April 8, 2019.

On April 22, Pilgrim and CCS filed a motion for attorney's fees for fees incurred in responding to Plaintiff's motion to transfer the bankruptcy case. 5:18-CV-588-DAE at docket no. 32. Plaintiff demanded a jury trial on the attorney's fees motion. The motion was referred to Magistrate Judge Richard Farrer. As that motion was pending before Judge Farrer, on May 2 Plaintiff filed in the original bankruptcy case a "Motion To Notify This Court of Two Recent Filings: One in US District Court Case 5:18-CV-00588 And One In State Court Case 2016CI13558. And Because of That Judge Gargotta  and Judge King Are Both Conflicted Out of Carl Merkle's Case Going Forward." Plaintiff field a similar motion in the consolidated appeals before Judge Ezra, case 18-CV-588. In those motions, Plaintiff claimed that Pilgrim's Claim No. 6-3 would be heard in the state-court case because of his "Motion to Start Up Litigation" filed in state court. He filed further motions demanding a jury trial on issues raised in his motion to transfer

the bankruptcy case, as well as on all issues raised in his consolidated bankruptcy appeal.[2]

On June 5, 2019, Judge Gargotta held a hearing on the "motion to notify" filed in the Bankruptcy Court. He treated Plaintiff's motion as a motion to recuse and denied the motion. He deemed it untimely because it was filed "at least 20 months after [Plaintiff] ascertained the alleged impartiality." He also rejected Plaintiff's argument that Judge Gargotta was "duped" by a conspiracy, and he noted there was no evidence to support any of the allegations of wrongdoing against the attorneys or parties.

Five days later, on June 10, 2019, Plaintiff filed the instant case, 19-cv-640. In it, he alleged that during his appeals, he discovered "tortious fraud and crime committed by Defendants," specifically "accounting embezzlement" to steal from Plaintiff's bankruptcy estate. He contends that all of the named defendants "duped" the bankruptcy court and defrauded his bankruptcy estate. He asserts that his claims objection trial was a "sham," a "kangaroo court," and "a secret trial." He asserts that various defendants have perjured themselves and misled Judges Gargotta and Ezra.

On June 17, Plaintiff filed a motion to withdraw the bankruptcy reference in the adversary proceeding. This was docketed as 19-MC-740. On July 8, he filed another motion to withdraw the bankruptcy reference for his bankruptcy case. This was docketed as 19-MC-790. Both were assigned to the Undersigned Judge. On August 7, Judge Ezra affirmed each of the consolidated appeals in 17-cv-713, except for the denial of Janie Merkle's motion to compel distribution, which he dismissed for lack of subject matter jurisdiction. Plaintiff did not appeal any of Judge Ezra's judgments, so those are now final.

---

[2] On June 13, 2019, Judge Ezra denied Plaintiff's motion for a jury trial in 5:18-CV-588. He noted that Plaintiff does not have a right to jury trial on the attorney's fees issue or the other issues in the consolidated bankruptcy appeals.

In September, Magistrate Judge Farrer issued a Report and Recommendation in 18-cv-588 on Pilgrim and CCS's motion for attorney's fees. Those parties sought attorney's fees pursuant to the Court's inherent authority to prevent abusive litigation practices. Judge Farrer determined that the conduct at issue did not yet reach a sanctionable level because Plaintiff was proceeding *pro se* and "although frustrating and costly" his behavior was insufficient to support a sanctions award "unless and until it continues beyond a clear warning from the Court like the one included in this order." He further warned Plaintiff that:

> [I]nstituting further frivolous or vexatious appeals, or engaging in frivolous or vexatious motions practice, in any case in this Court, will subject him to sanctions. Likewise he is further warned that engaging in *ad hominem* attacks against opposing parties or their counsel will have similar consequences, as will failing to comply with the local rules or the governing rules of civil procedure. The possible consequences include but are not limited to monetary sanctions and the issuance of a pre-filing injunction.

Judge Farrer pointed specifically to Plaintiff's engaging in inappropriate attacks on other parties, counsel, and the judges hearing his cases, as well as his questionable motions, specifically his motion to declare all of his bankruptcy and appeals cases as crime scenes. Plaintiff responded to Judge Farrer's order by referring to the various attorneys as "members of a criminal street gang engaged in unlawful debt collection" and argued that Judges Gargotta, King, Ezra, and now Farrer had all been "duped." On October 3, 2019, Judge Ezra adopted Judge Farrer's Report and Recommendation, including Judge Farrer's warning that further inappropriate filings or conduct could result in monetary sanctions or the imposition of a pre-filing injunction.[3]

---

[3] A week later, Merkle filed a "Notice of Removal and Mandatory Withdrawal of the Reference," removing a case styled *Carl Merkle v. James Thompson*. He purported to file the removal "in the Bankruptcy Case which is presently case 5:19-MC-790-XR" but it was filed as a separate civil action, 19-CV-1214. That action was a personal injury premises liability claim against James Thompson based on a slip-and-fall injury Plaintiff sustained in 2015 while shopping on premises owned by Thompson. Plaintiff asserts that the claim is owned by his bankruptcy estate.

On November 26, 2019, this Court issued an order addressing the various iterations of appeals before it. The Court granted the motion to withdraw the bankruptcy reference in 19-MC-740, thereby converting that case to 19-CV-740-XR, which the Court then dismissed for lack of an existing case or controversy. In 19-MC-790, the Court denied the motion to withdraw the bankruptcy reference. In 19-CV-1214, the Court referred the case to the Bankruptcy Court pursuant to the Standing Order because the bankruptcy case is still open and 19-CV-1214 may affect his bankruptcy estate. In this case, 19-CV-640, the Court granted the Defendants' motion to dismiss for failure to state a claim. The Court noted various reasons for its dismissal, including the fact that Plaintiff primarily sought to relitigate issues that had already been decided against him by Judge Gargotta and Judge Ezra. *See* docket no. 24 at 21. Further, the Court noted that in his various cases, Plaintiff pursues criminal charges and disciplinary enforcement measures against the various attorneys, but that Plaintiff "lacks standing to bring a private right of action under the Texas Penal Code" and "lacks standing to bring claims to enforce or for violations of the attorney disciplinary rules." *Id.* at 25. The Court also noted that Plaintiff "simply seek[s] to relitigate issues already decided or to prevent judicial consideration of matters based on an erroneous belief that such issues are subject to jury trial." *Id.* at 26. Plaintiff appealed the orders in 19-CV-640, 19-CV-740, and 19-MC-790. His appeal in 19-MC-790 and 19-CV-640 were both dismissed for want of prosecution on March 19 and May 14, respectively. His appeal in 19-CV-740 remains pending.

Defendants filed this instant motion for pre-filing injunction on January 29, 2020. Docket no. 28. Plaintiff responded on February 12 (docket no. 29).[4] That response includes 39 exhibits

---

[4] As Defendants note, Plaintiff's response falls outside of the deadline for non-dispositive motions as prescribed by the Local Rules. Docket no. 30 at 4. Defendants, therefore, seek for the Court to strike Plaintiff's response. The Court finds that although Plaintiff's response was filed late, the response itself is pertinent to the analysis below regarding Plaintiff's pattern of behavior in these various cases, given its

amounting to 1,705 pages. Many of those exhibits are affidavits from Plaintiff himself, with each affidavit expounding further upon a specific paragraph in his own response, with 20–30 pages of explanation for each paragraph in the response. *See, e.g.* docket no. 29-2 ("Affidavit of Carl Merkle, CPA Concerning Paragraph 2 of Opposed Response by Plaintiff to Defendants' Opposed Motion for Entry of Prefiling Injunction). In general, Plaintiff notes that he "is seeking to overturn, due to fraud, every single order at the lower courts that rolled up into this Court's beautifully written 12(b)(6) Order of November 26, 2019." Docket no. 29-9 at 19. He informs the Court that he "will also be alleging that the USA Government, via the acts of its employees (the duped federal judges and Judge Gargotta who failed to recuse himself), thus leading to Judge Gargotta potentially being in a position to commit more crime concerning the $161,000 in escrow, has" committed bankruptcy fraud and that the cases must therefore be heard in front of a jury. *Id.* at 20.

Defendants replied on February 18 (docket no. 30) and on March 10, filed a supplemental brief describing Plaintiff's conduct in the time since the original motion was filed. Docket no. 33. In the Bankruptcy Court proceeding, Plaintiff filed the following:

> RESPONSE IN OPPOSITION TO "MOTION OF JANIE MERKLE FOR CONVERSION OF THE CASE TO CHAPTER 7" AND OBSERVING THAT THE MOTION IS FRAUDULENT AND IS AN ATTEMPT TO COMMIT BANKRUPTCY FRAUD BY JANIE MERKLE AND PATRICK AUTRY BY VIOLATING FRBP 9011 AND LOCAL RULES CONCERNING COOPERATION. MERKLE COUNTER-CLAIMS "UNCLEAN HANDS" AND CLAIMS THAT HIS BANKRUPTCY CASE SHOULD BE REFERRED TO THE FBI AND US ATTORNEY'S OFFICE UNDER 18 USC CHAPTER 9 § 158 FOR PILGRIM'S MAY 28, 2019 FRAUDULENT REAFFIRMATION OF DEBT, WHICH MERKLE WANTS TO BE HEARD BY A JURY IN THE CASE THAT IS NOW DOCKETED IN THE FIFTH CIRCUIT COURT OF APPEALS AS CASE 20-50014 UNDER CRIMINAL ALLEGATIONS. MERKLE'S INDIVIDUAL CHAPTER 11 BANKRUPTCY ESTATE IS NOW WORTH MULTIPLE MILLIONS DUE TO CRIMES COMMITTED AGAINST IT BY A

---

untimely filing, its length, and the arguments the response proposes. Therefore, the Court declines Defendants' motion to strike or disregard Plaintiff's response.

"CRIMINAL STREET GANG" OF ATTORNEYS, BANKRUPTCY SPECIALIST ATTORNEYS THAT APPEAR TO BE ROUTINELY ENGAGED IN SERIOUS CRIMES, INCLUDING FELONY BARRATRY AND DUPING FEDERAL JUDGES AND STATE COURT SYSTEMS, AND MESSING WITH COURT REPORTERS' PREPERATION OF HEARING TRANSCRIPTS, ANOTHER FORM OF FRAUD UPON THE COURT.

Docket no. 33 at 8. In that filing, Merkle accused the "19-640 Defendants" of participating in a

conspiracy to kill Plaintiff by having an individual place drywall screws in Plaintiff's tires. *Id.* at

5. Plaintiff also notes that he "was hired by the King of the Universe to bring justice to the San

Antonio bankruptcy judicial system." *Id* at 3–4. He describes that he "is very grateful for what this

Court has done so far in setting up Merkle's opponents in this case that will allow Almighty God

working through the judicial systems, to fulfill one of his promises to Merkle, as prophesied in

Psalm 64, NLT, and in Proverbs 12:13-15 NLT." *Id* at 3–4. He asserts that "[t]he 'judicial record'

in Merkle's case does not 'lay out the facts' truthfully, instead it is a 'sham' that has been created

[by] '**F**alse **E**vidence **A**ppearing **R**eal ('FEAR')." *Id.* at 4 (emphasis in original).

## ANALYSIS

### I.    Standard of Review

Federal Rule of Civil Procedure 11(b) provides in relevant part that:

By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) It is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; [and]

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law

FED. R. CIV. P. 11(b). Violations of this Rule subject a litigant to sanctions, including non-monetary

ones, with the goal of "deter[ring] repetition of the conduct." FED. R. CIV. P. 11(c)(4). This Rule gives district courts wide discretion in determining what sanctions are appropriate. *See Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 877 (5th Cir. 1988). Further, a court may order a party to show cause why conduct has not violated Rule 11 and impose these sanctions *sua sponte*. FED. R. CIV. P. 11(c)(3).

In addition to these Rules, federal courts have inherent power to sanction abusive litigation practices "to protect the efficient and orderly administration of justice and … to command respect for [their] orders, judgments, procedures, and authority." *In re Stone*, 986 F.2d 898, 902 (5th Cir. 1993). Within this inherent authority is the ability to issue a pre-filing injunction to deter vexatious, abusive, or harassing filings with the court. *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 189 (5th Cir. 2008). When determining whether the imposition of a pre-filing injunction is appropriate, the court must weigh all relevant circumstances, including four main factors:

> (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

*Id.* (internal quotations omitted).  If issued, such injunctions "must be tailored to protect the courts and innocent parties, while preserving the legitimate rights of litigants." *Id.* A court must also "make a specific finding of bad faith before using its inherent power to impose sanctions." *Meyers v. Textron Fin. Corp.*, 609 F. App'x 775, 779 (5th Cir. 2015). Actions taken in both state and federal court can be considered in determining whether the litigant's conduct was undertaken in bad faith. *Baum*, 513 F.3d at 191.

## II.    Application

Defendants seek an order imposing upon Plaintiff a pre-filing injunction prohibiting Plaintiff from (a) initiating new litigation, or (b) further filings in existing case numbers without those filings first being reviewed and approved by the Court. Docket no. 28 at 11. Plaintiff's response to Defendants' motion contends that that the previous warnings issued against Plaintiff were, in fact, warnings intended for Defendants. Docket no. 29 at 3. He denies having ever engaged in any vexatious litigation practices and argues that, therefore, both Judges Ezra and Farrer (and presumably Judge Gargotta) were duped into issuing their respective warnings. *Id.* Therefore, Plaintiff asserts, "the only parties that the [prior warnings] could possibly be directed to, in a veiled sort of way, are the 19-640 Defendants…." *Id.* His response then proceeds to assert that the "battle" between him and Defendants is a "spiritual battle" in which Plaintiff "strives to be a man of complete integrity" whereas the actions of the Defendants are an "affront to God." *Id.* at 3, 5. He remarks that "The Lord God Most High has just spoken to me and told me to not be upset" at Defendants' motion but that God "has a surprise in store for you if that gets filed and becomes an order." *Id.* at 10. Plaintiff concedes that he intends to continue to refile his motions and objections "as many times [as] necessary until Merkle states a claim upon which a judge can grant Merkle his claim." *Id.* at 13. Finally, Plaintiff seeks for the Court to issue an arrest warrant for each of the individual Defendants, though he "explicitly does not want the Court to issue any arrest warrant of Judge Gargotta." *Id.* at 18. He concedes he is "willing to let any of the 19-640 Defendants escape through an SEC style 'neither admit nor deny' type of release," that he is willing to drop the litigation against any of the defendants if they "take the Texas Penal Code Chapter 71  renunciation

defense,"[5] and that he is "just shouting with joy and praises to God Most High and salivating at the prospects" of presenting the criminal case to a jury. *Id.* Plaintiff notes that he will donate any recovery from the criminal case to charitable organizations and that, therefore, Defendants "could end up looking like heroes out of this, if they will wise up, and turn from their wicked ways." *Id.* at 19.

The Court finds that a prefiling injunction is appropriate. In considering the first factor— the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits—the Court finds that Plaintiff's history in this case and others counsels in favor of a pre-filing injunction. Plaintiff has filed five separate appeals from orders of the Bankruptcy Court, has sought relief in a previously closed case in state court, and has filed at least four suits in this Court; all of these cases concern the same subject matter and parties, and Plaintiff has not prevailed in any of them. Moreover, his filings lack any cognizable legal basis, such as his motion to have his bankruptcy case declared a crime scene or his motion for an arrest warrant issued against all Defendants in this case.

The second factor—whether Plaintiff has a good faith basis for his filings or instead simply intends to harass—similarly counsels in favor of an injunction. Again, Plaintiff's motions lack any cognizable legal basis but instead seem intended to harass or further propound his previously dismissed theory that Defendants and the San Antonio federal judiciary is engaged in a conspiracy. By way of example, Plaintiff's response to this motion, that the warnings issued against Plaintiff were actually warnings intended for the Defendants, is nonsensical. Each of the prior warnings

---

[5] He adds that "God has already issued his warning in Psalm 64, if the 19-640 Defendants do not take the Texas Penal Code Chapter 71 renunciation defense." Docket no. 29-13 at 21. He further believes that the issuance of an arrest warrant against the individual Defendants would convince Judge Gargotta himself to "take" the renunciation defense so that he might avoid arrest. Docket no. 29-10 at 14.

was (1) a result of Plaintiff's conduct and (2) was addressed specifically to Plaintiff. Moreover, Plaintiff has routinely ignored this Court and others' warnings and orders. This Court instructed Plaintiff that there is no basis for him to bring a private right of action under the Texas Penal Code; months later, he reiterated that attempt. Judge Farrer (and this Court) warned Plaintiff to abstain from *ad hominem* attacks on the Defendants later; months later, he reiterated those attacks with increasing severity. Judge Farrer warned Plaintiff that failure to follow the local rules would carry consequences; months later, he ignored those rules. In his starkest form of disregarding the judiciary's orders, Plaintiff rewrites Judge Ezra's warning by adding the "19-640 Defendants" to the warning. Docket no. 29 at 17. Further revealing the increasingly harassing behavior is Plaintiff's recent assertion that the individual Defendants in this case attempted to kill Plaintiff by placing drywall screws in his tires. Docket no. 33 at 5. His recent assertion that "[God] has a surprise in store for you if" a pre-filing injunction is imposed further underscore the increasingly harassing, perhaps threatening, conduct Plaintiff has displayed.

The third factor—the extent of the burden on the courts and other parties—similarly weighs in factor of an injunction. The number of suits Plaintiff has brought against the same Defendants, each a reiteration of his same allegations of a conspiracy against him, alone constitutes a burden upon this Court, other courts in this District, the Bankruptcy Court, the Texas state courts, and the Fifth Circuit (where Plaintiff's briefs number over 100 pages, *see, e.g.* docket no. 34-2). Plaintiff has shown a continuous disregard for the Local Rules, further burdening this Court and the parties. And even where he does follow those rules, such as limiting his response in opposition to this motion below the page limit, Plaintiff files numerous attached affidavits, each expounding upon the theories laid out in his motion, paragraph by paragraph. Plaintiff's response, though on face

value limited to 30 pages, actually amounts to over 350 pages of briefing, little of which is related to the pre-filing injunction at issue, and most of which is related to his theories that Defendants and the unwitting federal judiciary are engaged in a conspiracy against him. *See* docket no. 29-1 through 29-13.

The fourth and final factor—the adequacy of alternative sanctions—similarly instructs the Court that a pre-filing injunction is the most appropriate approach. Further warnings would be fruitless, as Plaintiff has already been warned multiple times, to no avail. Rather than abide by those warnings, Plaintiff instead chooses to view those warnings as intended for the Defendants rather than himself. Further, any monetary sanctions are unlikely to mitigate Plaintiff's behavior, considering that it is unlikely Plaintiff would be able or willing to pay those sanctions. The Court understands that the requested injunction is broad in that it enjoins Plaintiff from filing pleadings in any extant cases in the district court, as well as from filing future cases in this district; nonetheless, courts have upheld similarly broad injunctions where they are necessary to counter the very behavior justifying the imposition of the sanction. *See, e.g. Terra Partners v. Rabo Agrifinance, Inc.*, 504 F. App'x 288, 291 (5th Cir. 2012) (enjoining party from filing any "pleading, lawsuit, or other document in any federal court"); *Matter of Carroll*, 850 F.3d 811, 814 (5th Cir. 2017) (affirming bankruptcy court's pre-filing injunction applicable to "any pleading or document in this case or its associated cases or adversary proceedings and…any future cases"); *Thanedar v. Time Warner, Inc.*, 352 F. App'x 891, 900 (5th Cir. 2009) (affirming injunction against filing "any motions, actions, or complaints" in the district court that were related to previously adjudicated issues); *Morgan v. Weinstein*, No. 5:18-CV-645-DAE, 2019 WL 2565266, at *3 (W.D. Tex. May 23, 2019) ("Plaintiff must obtain leave of the Court before filing any additional pleadings, motions,

or any other materials.").[6] Finally, the injunction is necessary when considering Plaintiff's own assertion in his response to this motion that he will continue to refile his motions and objections "as many times [as] necessary until Merkle states a claim upon which a judge can grant Merkle his claim." Docket no. 29 at 13.

At times through the course of this case and others, Plaintiff has asserted the fact that he is proceeding *pro se* as an excuse for his behavior, *see, e.g.* docket no. 29 at 8, but one's status as a *pro se* litigant does not excuse the litigant's behavior. *See Matter of Carroll*, 840 F.3d at 815 ("To the extent that appellants maintain that sanctions cannot be imposed against them because they are pro se litigants, they are incorrect); *Farguson v. MBank Hous., N.A.*, 808 F.3d 358, 359 (5th Cir. 1986) ("That his filings are *pro se* offers Farguson no impenetrable shield, for one acting *pro se* has no license to harass other, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets."). Plaintiff represented to this Court that this litigation is a "spiritual battle," docket no. 29 at 3, but the imposition of a pre-filing injunction is appropriate "for the very purpose of causing the…litigant with time on his hands and a disposition to retaliate against the system, to think twice before cluttering our dockets with frivolous or philosophical litigation." *Gelabert v. Lynaugh*, 894 F.2d 746, 748 (5th Cir. 1990).

## CONCLUSION

For the foregoing reasons, Defendants' motion for entry of a pre-filing injunction (docket no. 28) is GRANTED. Therefore, the Court ORDERS that Plaintiff Carl N. Merkle be ENJOINED from filing any pleadings or motions in any civil lawsuit currently pending in the United States

---

[6] The Court may, at a later date, modify the injunction and/or impose monetary sanctions in addition to the pre-filing injunction. *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 579 (5th Cir. 1996).

District Court for the Western District of Texas. This includes the case presently before Judge Fred Biery, 20-CV-38-FB**. If Plaintiff intends to file anything in that case, he must first seek leave from Judge Biery**. This further includes two cases pending before the Undersigned Judge, 20-CV-502-XR and 20-CV-541-XR**. If Plaintiff intends to file anything in either of those cases, he must first seek leave from the Undersigned Judge**.

The Court further ORDERS that Plaintiff be ENJOINED from filing any new civil lawsuit in the United States District Court for the Western District of Texas unless he first seeks leave and obtains permission from a district judge in this district. **Before filing any new lawsuit in this district, Carl N. Merkle must file a motion for leave to file the action, along with a proposed complaint or filing, which motion shall be randomly assigned to a judge in this district for disposition**.

The Clerk is instructed to not accept any new filing (in 20-CV-38-FB, 20-CV-502-XR, or 20-CV-541-XR) or any new lawsuit from Merkle unless and until such motion for leave is filed and granted.

It is so ORDERED.

SIGNED this 22nd day of May, 2020.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

17